## TOLL v. TOLL.

### Opinion delivered October 21, 1918.

CANCELLATION OF INSTRUMENT—SUFFICIENCY OF EVIDENCE.—Evidence *held* to justify decree of chancellor refusing to cancel a deed of conveyance from father to son upon the ground either of undue influence or failure of consideration.

Appeal from Prairie Chancery Court; Southern District; *John B. Elliott,* Chancellor; affirmed.

*J. F. Holtzendorff, W. H. Gregory* and *Eugene Lankford,* for appellants.

1. The evidence clearly establishes a case of undue influence, legal fraud and failure of consideration. Oral testimony was admissible to explain the contract and show the real consideration. 86 Ark. 171; 103 *Id.* 467; 104 *Id.* 568; 55 *Id.* 112; 19 Col. 168. The contract was ambiguous. 113 Ark. 39.

2. Improper and undue influence was shown. 84 Ark. 493. A fiduciary relation existed between the parties, and the deed was *prima facie* voidable unless the grantee shows by clear and convincing proof *uberrima fides.* 244 Ill. 413; 249 *Id.* 56; 235 *Id.* 396; 112 N. W. 70; 237 Ill. 620. See also 13 A. & E. Enc. L. 11-12, etc.; 19 L. R. A. 767; 97 Va. 143.

3. The burden of proof was on appellees to show fairness. 156 N. Y. 341; 120 Mich. 30; 100 Wis. 24. Appellee occupied a trust relation. 78 Ark. 116; 149 N. C. 137.

4. There was no real consideration. 86 Ark. 251; 103 *Id.* 464; 104 *Id.* 568; 124 *Mich.* 627.

*J. G. Thweatt* and *Sam Frauenthal,* for appellees.

1. The land was partnership property, and there was a good and valuable consideration for the deed. The deed and contract were in writing and made for valuable consideration. It was an executed contract and to set it aside the evidence must be clear, strong and conclusive. 9 C. J. 1254; 96 Ark. 251; 100 *Id.* 565.

2. Parol testimony was not admissible to vary the written contract, or contradict it. 99 Ark. 350; 90 *Id.* 426; 99 *Id.* 218; 109 *Id.* 82.

3. No undue influence was shown and many years allowed to elapse before any steps taken. There has been undue delay and laches. 19 Ark. 16; 137 U. S. 556; 95 Ark. 178; 101 *Id.* 230; 103 *Id.* 58.

4. A good and valuable consideration was proven and no undue influence was shown. The chancellor's decree is correct. 203 S. W. 286.

McCULLOCH, C. J. This is a controversy between father and son concerning the cancellation of a deed executed by the former to the latter, conveying a certain tract of land in Prairie County, Arkansas. The deed of conveyance in question was executed by the plaintiff, B. Toll, and his wife, Jennie Toll, on June 12, 1908, and was duly acknowledged and placed of record; and on the same day B. Toll, and R. H. Toll, the grantee in the deed, entered into a written contract reciting the execution of said deed, and providing, in substance, that the grantors might hold possession of the land conveyed during the period of their lives, and that the grantee should pay the taxes on the land during that time and keep up the repairs.

It is conceded on both sides that the effect of the conveyance and contemporaneous contract was to convey the fee to the grantee subject to the reservation of a life estate in the grantors. This action was begun by B. Toll and his wife in the chancery court of Prairie County on March 21, 1916, against R. H. Toll to cancel said deed and contract on the ground of undue influence alleged to have been exerted by R. H. Toll to induce his father to execute the same, and also on the ground of failure of consideration. The chancery court decided the issues of fact in favor of the defendant, and the plaintiffs have appealed.

It does not appear to us that the findings of the chancellor are against the preponderance of the testimony. B. Toll came to Arkansas with his six sons about twenty-five years ago, and they established themselves in busi-

ness in Prairie County under the firm name of B. Toll &
Sons. They built up a business principally in selling
prairie hay, and in the course of time title to about 1,100
acres of land was acquired. This included the land in
controversy—a tract containing twenty acres. The title
was taken in the name of B. Toll individually, but it is
claimed by the defendant that the lands really belonged
to the partnership. It is unnecessary to determine in this
case whether or not that contention of the defendant is
well founded.

Defendant is the eldest of the sons, and he bought
out his brothers, and the business at last came down to a
partnership between the father, B. Toll, and R. H. Toll,
the son. The lands were divided—at least a tract was
conveyed to each of the sons, and the father kept one
tract in his own name and also kept, after the division,
the tract in controversy. R. H. Toll claimed, after the
division, that the tract received by him was not of equal
value of the tract received by each of his brothers. The
testimony warrants the conclusion that B. Toll made the
conveyance in question to satisfy the claim of his son and
to equalize the values of the several shares. At any rate,
we fail to see any element of fraud or undue influence in
the procurement of the conveyance. B. Toll is an old man,
but is still active and apparently in full possession of his
mental powers and strength of character. No trick or
artifice was practiced to induce him to convey the land
to his son, and he does not claim in his testimony that he
was in any way misled by his son, or that any kind of in-
ducement was brought to bear on him to get him to exe-
cute the deed. He executed it freely and voluntarily and
uncomplainingly. The only thing in the way of induce-
ment of which he speaks in his testimony is that he was
told by his son that he would be taken care of during his
lifetime, and he now complains of his son's conduct in
not contributing to his expenses while in a hospital for
treatment. The defendant paid the taxes on the land, ex-
cept for the year 1914, when for special reasons he asked

to be relieved of doing so, and the next year, when he says his father's wife paid the taxes before he (defendant) could do so. Defendant also built another house on the land at a cost of $500, and plaintiffs are getting the rents from the house. Plaintiffs waited about eight years after the execution of the conveyance until they took steps to set it aside.

We do not think the testimony would justify a cancellation of the conveyance, or at least we cannot say that the chancellor was wrong in refusing to do so.

Affirmed.